Not for Publication

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| CHEN-TEH SHU, DONG-XUNG DAI, and ROBERT SHI, as joint executors of the will of YUEH-LAN WANG,<br><br>*Plaintiffs*,<br><br>v.<br><br>SUSAN RUEY-HWA WANG, PAO CHU LEE, and VANESSA RUEY-JI WONG,<br><br>*Defendants*. | Civil Action No. 10-5302 (JMV)<br><br>**OPINION** |

**John Michael Vazquez, U.S.D.J.**

This matter comes before the Court on multiple motions filed by Defendants Susan Ruey-Hwa Wang ("Susan"), Pao Chu Lee ("P.C."), and Vanessa Ruey-Ji Wong ("Vanessa") (collectively, "Defendants") and Plaintiffs Chen-Teh Shu, Dong-Xung Dai, and Robert Shi, as joint executors of the will of Yueh-Lan Wang (collectively, "Plaintiffs" or the "Joint Executors").[1] This case is one of many related suits regarding the proper disposition of assets from the estate of a Taiwanese[2] billionaire, Yung-Ching Wang ("Y.C."), who died intestate. Despite the complex factual and procedural history, the case boils down to a familial dispute concerning large sums of money. This matter was filed in 2010 by a Taiwanese citizen, Yueh-Lan Wang ("Yueh-Lan"),

---

[1] Because this is a family dispute many of the parties have the same or very similar last names. For clarity, and as the parties do throughout their briefs, the Court will refer to the individuals involved by their first names.

[2] The official name of Taiwan is the Republic of China.

"by and through her attorney-in-fact," Dr. Winston Wen-Young Wong ("Winston"), who is also a Taiwanese citizen. Yueh-Lan has since passed away, and now the Joint Executors of her estate seek to recover property that was allegedly transferred out of the multibillion-dollar estate of Yueh-Lan's late husband, Y.C., to ensure that Yueh-Lan and her heirs receive the full amount of inheritance that she is due under Taiwanese law.

The following motions are pending before the Court: (1) Plaintiffs' Motion for Leave to File Second Amended Complaint (the proposed amended complaint or "PAC") Pursuant to Federal Rule of Civil Procedure 15(a) (the "Motion to Amend") (D.E. 68); (2) Defendants' Cross Motion to Dismiss the Action on the Grounds that the Action is a Legal Nullity (the "Cross Motion to Dismiss") (D.E. 79); (3) Defendants' Renewed Motion to Dismiss the Amended Complaint (the "Renewed Motion to Dismiss") (D.E. 78); and (4) Plaintiffs' Motion to Strike the Cross Motion to Dismiss and the Renewed Motion to Dismiss (the "Motion to Strike") (D.E. 94). Because the motions raise similar issues of law and fact, the Court will consider the motions together. The Court reviewed all submissions made in support and in opposition to the motions and held oral argument on June 29, 2016. For the reasons stated below, the Renewed Motion to Dismiss (D.E. 78) is **GRANTED** on *forum non conveniens* grounds. Because this motion is granted, the Court is not reaching the other arguments raised in the motion to dismiss. The Motion to Amend and the Cross Motion to Dismiss are **DENIED WITHOUT PREJUDICE AS MOOT**. Finally, the Motion to Strike is **DENIED** because it is procedurally improper.

The Court will also revisit its Order granting Plaintiffs' Motion for Substitution of the Joint Executors for Deceased Plaintiff Yueh-Lan Wang (the "Substitution Order") (D.E. 61) due Plaintiffs' erroneous interpretation of this Order. The Joint Executors are substituted as Plaintiffs for the limited purpose of addressing the motions discussed in this opinion and, in light of the

*forum non conveniens* dismissal, refiling the matter in a court of competent jurisdiction in Taiwan. The remaining arguments raised in opposition to Plaintiffs' Motion to Substitute are not reached by the Court, and Defendants are free to raise those issues in a Taiwanese court. Nothing in this opinion limits, or is intended to limit, Defendants in any manner in regard to the remaining arguments. This issue is addressed further below.

## I.   FACTUAL AND PROCEDURAL HISTORY

### A.   Factual Background

Y.C. Wang

This case involves the disposition of assets in Y.C.'s estate. Y.C., a citizen of Taiwan, was the founder of one of Taiwan's largest manufacturing conglomerates, the Formosa Plastics Group ("FPG"). FAC ¶¶ 11-12.[3] FPG's "four core companies" are headquartered in Taiwan. *Id.* ¶ 32. FPG also has a worldwide presence and four FPG affiliates are located in the United States.[4] While the United States affiliates have facilities throughout the country, all are headquartered in Livingston, New Jersey. *Id.* ¶¶ 32-33. Y.C. did not speak, read, or write English. *Id.* ¶ 11. He regularly traveled to New Jersey for business. While in New Jersey, Y.C. stayed at his house in Short Hills, New Jersey (the "Short Hills residence"). *Id.* ¶¶ 11, 78.

Y.C. was the largest equity holder in each of the FPG companies. *Id.* ¶ 34. Prior to his death, *Forbes* magazine estimated that Y.C.'s net worth was approximately $6.8 billion dollars. *Id.* ¶ 12. Plaintiffs allege that Y.C. held his FPG stock in overseas entities and through individual and company nominees "to minimize his tax obligations and to confuse the Taiwanese tax

---

[3] Although Plaintiffs seek leave to file the PAC, the First Amended Complaint (the "FAC") (D.E. 18) is the operative pleading at the current time.

[4] FPG also has companies in Vietnam, Indonesia, and mainland China. FAC ¶ 32.

authorities." *Id.* ¶ 37. Plaintiffs further allege that "Y.C.'s ownership structure was driven largely by tax and financial considerations, not his concerns or wishes about his heirs or successors." *Id.* ¶ 38. Plaintiffs, however, do not have detailed information regarding Y.C.'s assets because he "maintain[ed] extreme secrecy in the details of his ownership structure and [] limit[ed] knowledge of these details to Defendants and a few trusted FPG employees, including [long-time FPG employee, Wen-Hsiung] Hung."[5] *Id.* ¶ 37.

<u>Y.C.'s Personal Life</u>

Y.C. had several romantic relationships throughout his life. Y.C. married Yueh-Lan on or about December 20, 1935 and they remained married until Y.C.'s death in 2008. Although Y.C. and Yueh-Lan did not have any biological children, they are referred to as the "First Family" in Taiwan. *Id.* ¶¶ 26, 30. As noted, Yueh-Lan passed away in Taiwan on July 1, 2012, after this matter was filed on her behalf. *See* Statement Noting the Death of Plaintiff Yueh-Lan Wang (D.E. 37).

Y.C. also had a long-term relationship with Wang Yang Chiao, who is now deceased.[6] They had multiple children together and are referred to as the "Second Family." Winston is Y.C.'s eldest son and a member of the Second Family. *Id.* ¶¶ 13, 30. Although not his biological mother, Yueh-Lan helped raise Winston and Winston treated Yueh-Lan "as his natural birth mother." *Id.* ¶ 30; Certified Translation of the Will of Yueh-Lan Wang at 3, ¶ 1 (D.E. 47-3). Yueh-Lan granted Winston power of attorney prior to her death (*see* FAC ¶ 13) and named him as her sole beneficiary in her will. *See* Certified Translation of the Will of Yueh-Lan Wang at ¶¶ 2-3.

---

[5] Hung, who resided in Taiwan, recently passed away. Defs' Updated FNC Br. at 6 n.8.

[6] The parties dispute whether Wang Yang Chiao was married to Y.C. or was merely "a female companion." Defs' Updated FNC Br. at 3-4.

P.C. was Y.C.'s third "companion" and "matriarch of the Third Family."[7]  FAC ¶ 14.  The

third family includes Susan and non-parties Sandy Ruey-Yu Wang, Diana Ruey-Huei Wang and

Lora Ruey-Rong Wang.  *Id.* ¶ 30.  Vanessa is P.C.'s daughter from another relationship.  *Id.* ¶ 20.

P.C. was born in Taiwan and became a naturalized United States citizen in 1991.[8]  In addition,

P.C. spent "substantial and continuous periods of time" at the Short Hills residence and was the

record title holder when this suit was filed.  *Id.* ¶ 16.  P.C., however, has "always and continuously

maintained [her] primary residence" in Taiwan.  Supplemental Certification of Andrew Muscato

in Support of Defendants' Motion to Dismiss the Amended Complaint Based on *Forum Non*

*Conveniens* ("Muscato Cert.") (D.E. 67) Ex. 21, ¶ 3 (Certified Translation of the Second

Supplemental Certification of P.C. Lee ("Lee Cert.")).  P.C. has not spent time in New Jersey since

Y.C.'s death in 2008, and sold the Short Hills residence to her daughter Diana in 2012.  *Id.*; Second

Supplemental Certification of Jonathan S. Liss in Further Opposition to Motion of Dismiss Based

on *Forum Non Conveniens* ¶ 15 (D.E. 71-1).

Plaintiffs allege that P.C. "used her status as Y.C.'s companion to put her interests and the

interest of her children . . . ahead of those of the First Family and the Second Family."  *Id.* ¶ 51.

P.C. "actively interfered" in Y.C.'s familial relationships and was "instrumental" in decisions to

give P.C.'s children key management roles, board positions, assignments, deals, and contracts.  *Id.*

¶ 52.  Because of P.C., "members of the Second Family were driven away from the business and

excluded from FPG management."  *Id.* ¶ 53.  For example, Susan presently works for FPG.  She

---

[7] The parties also strenuously disagree as to whether P.C. and Y.C. were legally married under Taiwanese law.  *See, e.g.*, FAC ¶¶ 15, 27-29.  If P.C. and Y.C. were married, Yueh-Lan would not be entitled to half of the marital estate, as she contends.

[8] P.C. renounced her United States citizenship after this case was filed and has no plans to return to the United States.  Lee Cert. ¶¶ 2-3.

served on the Executive Committee of the Board of Directors and has held various titles for FPG affiliates. *Id.* ¶¶ 41, 136-38. Susan is a United States citizen and has a home in Livingston, New Jersey. *Id.* ¶ 19. When the complaint was filed, however, Susan was a resident of Taiwan. *See* Muscato Cert. Ex. 1, ¶ 43(g) (Winston's 2009 New Jersey State Court complaint listing Susan as a resident of Taiwan); Ex. 21 (July 27, 2015 Judgment of the High Court of Taiwan stating that Susan permanently resides in Taipei City).

Plaintiffs also allege that Vanessa, while not Y.C.'s natural daughter, played a significant role in FPG's operations. *See, e.g.*, *id.* ¶¶ 45-46 (explaining that Vanessa was chair of the board of directors for an FPG operation in China). Vanessa is a United States citizen and has resided in Pennsylvania since 2002. Certification of Vanessa Wong in Support of Defendants' Motion to Dismiss the Amended Complaint ("Vanessa Cert.") ¶ 3 (D.E. 77). Although Vanessa owned property in New Jersey, it was never her primary residence. *Id.*

Y.C.'s Illness and Death

In 2005 and at the age of 89, Y.C. became seriously ill. He was unable to attend a number of family events due to his illness, and in 2006, he stepped down as Chairman of the FPG Board.[9] *Id.* ¶¶ 41, 55. Plaintiffs allege that after Y.C. became ill and because of his age, Defendants were able to exert undue influence over Y.C. and undertook "a number of transactions, transfers and other actions to enrich themselves and to reduce the Marital Estate, to the detriment of Yueh-Lan." *Id.* ¶ 55. While on a business trip in New Jersey in 2008, Y.C. died at the Short Hills residence. *Id.* ¶¶ 78-79. Y.C. died without a will. *Id.* ¶ 11.

---

[9] After Y.C. resigned as Chairman, power was transferred to an Executive Management Committee. As discussed, Susan is a member of the Executive Management Committee. FAC ¶ 41.

After his death, an accountant retained by Susan and FPG identified assets and valued Y.C.'s estate at $1.7 billion. The estate included "FPG stock, cash, real property, and other assets owned by Y.C. in Taiwan at his death." *Id.* ¶ 81. Plaintiffs allege that the accounting improperly failed to account for cash or property held by Y.C. or his nominees outside of Taiwan and billions of dollars in assets "purportedly contributed by Y.C." to various trusts. *Id.* ¶ 82. "In sum, upon information and belief, the $1.7 billion in Taiwan assets represents only a portion of Y.C.'s assets, monies and properties." *Id.* ¶ 83. Plaintiffs contend that within the five years before his death, Y.C. transferred assets, money and property out of his possession and/or name for the purpose of reducing Yueh-Lan's share of the marital estate. *Id.* ¶ 6.

The sum and substance of this litigation is to allow Plaintiffs to identify assets that allegedly have been improperly transferred and to return the assets to Y.C.'s estate so that Yueh-Lan receives her full share of the marital estate. There appear to be three general categories of assets that Plaintiffs believe should be included in the estate but were improperly transferred within five years of Y.C.'s death, between October 15, 2003 and October 15, 2008, without Yueh-Lan's knowledge and for the purpose of reducing her rightful share. The categories are as follows[10]:

- The Trusts: Plaintiffs allege that much of Y.C.'s FPG stock, which amounted to billions of dollars of assets, was held in off-shore trusts. *Id.* ¶ 87. Plaintiffs further allege that Y.C. improperly transferred assets, including stock in FPG companies, to five separate Bermuda purpose trusts (the "Bermuda Trusts") and the New Mighty

---

[10] The PAC adds an additional category: "Direct Transfers to P.C." Plaintiffs allege that in written disclosures in a Taiwanese lawsuit in 2009, P.C. reported that she owned assets in excess of $15 million. Plaintiffs claim that Y.C. improperly transferred these assets to P.C. because she "never held any occupation or employment that could have provided her with millions of dollars of assets." PAC ¶ 24 (D.E. 68-3). Plaintiffs also allege that P.C.'s shares of Sana International Corporation stock were improperly transferred to her from Y.C. *Id.* ¶¶ 24, 65. Plaintiffs do not state with any specificity when the assets were allegedly transferred to P.C.

7

Trust, a trust formed under United States law. FAC ¶ 58. Plaintiffs, however, have clarified in their PAC and briefing that "the Marital Estate assets that were transferred to the Bermuda Trusts and the U.S. Trusts are not the subject current action."[11] PAC ¶ 50 (D.E. 68-3).

- The Credit Suisse Account: Plaintiffs allege that there is a Credit Suisse bank account that contains "substantial cash and securities of Y.C. valued at approximately $1 billion" and that assets were improperly transferred into this account. FAC ¶¶ 140-43. Plaintiffs allegedly learned about the Credit Suisse account in 2009, when Winston met with two Credit Suisse employees, Orchid Yuan and Candice Chen. During this meeting, the Credit Suisse employees "confirmed Dr. Wong's understanding that this account exists and is an asset of Y.C.'s estate," and that the account is in either P.C. or Vanessa's name. *Id.* ¶ 141. Although Plaintiffs claim to have no information about the location of this account, Defendants provided evidence demonstrating that Yuan and

---

[11] The Court has not considered the substance of the PAC in deciding this motion, but the Court does make reference to the PAC to demonstrate that even if the PAC were filed, it would not change the Court's decision. In addition, even before the Plaintiffs' moved to file the PAC, Plaintiffs averred that the trusts were not part of the suit and had only been included in the FAC for purposes of background and context. In their motion to file the PAC, Plaintiffs indicated that the PAC was intended to, among other things, make this point clear. *See* Plfs' Motion to Amend Br. at 5 (D.E. 68).

According to the PAC, Plaintiffs are currently engaged in litigation in Bermuda regarding the Bermuda Trusts and in the United States Court of Appeals for the District of Columbia Circuit (the "D.C. Action") for the New Mighty Trusts. *See* PAC ¶¶ 33-35, 59-60. Winston also filed a complaint in New Jersey state court, seeking to be appointed administrator of Y.C.'s estate. The complaint was ultimately dismissed. *See In re Estate of Yung-Ching Wang*, No. CP-0111-2009, 2011 WL 2981478, at *2, 8 (N.J. App. Div. July 25, 2011). Finally, Winston filed a complaint on behalf of all heirs of Y.C. in Hong Kong, against Hong Kong entities that allegedly improperly transferred assets out of the marital estate. *See* Defs' Supp. Br. at 2-3 (D.E. 33); Plfs' Supp. Br. at 7 (D.E. 34). The Court does not know if, or how, the Hong Kong action has resolved. According to Defendants, the Hong Kong action has been voluntarily dismissed and refiled on several occasions.

Chen are located in either Hong Kong or Singapore. *See* Second Supplemental Certification of Andrew Muscato in Further Support of Defendants' Motion to Dismiss Based on *Forum Non Conveniens* ("Second Muscato Cert.") (D.E. 76) ¶ 5.

- Asset Transfers in New Jersey: Finally, Plaintiffs allege that sometime within the five years before his death, Y.C. transferred real and personal property located in New Jersey to Defendants. *Id.* ¶¶ 18-20. Plaintiffs provide no further details as to what was transferred, when it was transferred, or by whom it was transferred.

### B. Procedural History

This familial dispute has a complex and lengthy procedural history. The matter was initially filed on October 14, 2010 by Winston, Yueh-Lan's "attorney-in-fact . . . pursuant to a duly executed power of attorney." Comp. ¶ 7 (D.E. 1).[12] The FAC asserts four causes of action pursuant to the Civil Code of Taiwan (the "Taiwan claims") and five causes of action under the New Jersey common law (the "New Jersey claims"). *See generally id.* The Taiwan claims are all brought pursuant to the Civil Code of Taiwan and include two causes of action addressing marital property (Counts One and Two), one cause of action addressing inheritance rights (Counts Three), and one cause of action for unjust enrichment (Count Four).[13] *See* Muscato Cert. Ex. 12, ¶¶ 5-10 (Supplemental certification of Professor Jan explaining the elements of the Taiwan claims); Liss

---

[12] The original complaint asserted claims against John Doe Defendants who allegedly "planned, engaged, and intentionally participated in the improper, wrongful and unlawful transfer, diversion and misuse of assets, monies, and property owned, held or maintained by Y.C." Compl. ¶¶ 11-12. After Defendants' filed their first motion to dismiss (D.E. 14), Plaintiffs filed an amended complaint as a matter of course removing the John Doe Defendants. The amended complaint is not otherwise materially different from the original. *Compare* Compl., *with* FAC. For example, the FAC was also filed by Winston on behalf of Yueh-Lan.

[13] The PAC asserts an additional claim for unjust enrichment pursuant to the Civil Code of Taiwan. PAC ¶¶ 97-102.

Cert. Ex. J, ¶¶ 62-88 (Certification of Professor Chen explaining the elements of the Taiwan claims). The New Jersey causes of action are as follows: Count Five – Conversion; Count Six – Unjust Enrichment; Count Seven – Constructive Trust; Count Eight – Accounting; and Count Nine – Civil Conspiracy.

Defendants argue that this case was improperly filed in the first instance.[14] Defs' Cross Motion Br. at 15 (D.E. 80). Defendants allege that the power of attorney (the "POA"), pursuant to which Winston filed suit, did not actually authorize Winston to file lawsuits on Yueh-Lan's behalf. *Id.* at 17-19. In the alternative, Defendants argue that even if the POA permitted Winston to commence litigation, the authorization lapsed before this suit was filed because of Yueh-Lan's incompetency. *Id.* at 20. Plaintiffs adamantly disagree, arguing that the POA did authorize Winston to commence litigation and that no court ever declared Yueh-Lan incompetent. *See* Plfs' Reply Memorandum in Further Support of Motion to Amend and Cross Motion to Dismiss at 36-40 (D.E. 93). The parties, however, agree that the validity and scope of the POA, and Yueh-Lan's competency or lack thereof, are governed entirely by Taiwanese law. *Id.*; Defs' Cross Motion Br. at 15.

On July 15, 2011, Defendants filed a motion to dismiss the amended complaint pursuant to Federal Rules of Civil Procedure 12(b)(1), (2), (5), (6), and (7), and the doctrine of *forum non conveniens* ("FNC").[15] D.E. 23. On July 1, 2012, while the motion to dismiss remained pending,

---

[14] Defendants have raised this argument multiple times, including in their (1) Renewed Motion to Dismiss; (2) Cross Motion to Dismiss; and (3) opposition to the Motion to Substitute (D.E. 52).

[15] The parties submitted supplemental briefing (D.E. 33-35) addressing whether the Hong Kong proceedings, the D.C. Action, and a proceeding in Taiwan to appoint a guardian for Yueh-Lan "are relevant to the issues before this Court, including jurisdictional and *forum non conveniens* issues, and whether such proceedings may moot or partially resolve any pending issues." *See* February 16, 2012 Order (D.E. 32).

Yueh-Lan died in Taipei, Taiwan. *See* Statement Noting the Death of Plaintiff Yueh-Lan Wang. Due to litigation in Taiwan to appoint an executor of Yueh-Lan's will, this case was administratively dismissed on January 13, 2015. At the time, Judge Cecchi ruled that the case would be reactivated "upon the request of either party, following the resolution of the Taiwan court proceedings." January 13, 2015 Order at 2 (D.E. 45).

The Taiwan Supreme Court issued a Certificate of Finalization on August 25, 2015, which made the Taiwan Appeals Court's designation of the Joint Executors final and binding. As a result, the Joint Executors filed a letter with the Court requesting that the matter be reinstated and that they be substituted in as Plaintiffs. D.E. 46, 47. The matter was reinstated on October 5, 2015, and on March 1, 2016, it was transferred to this Court. D.E. 50, 58. On March 18, 2016, the Court granted Plaintiffs' Motion to Substitute, with the caveat that the Court was not addressing the POA, Yueh-Lan's competence, or "any other argument concerning the capacity to sue." *See* Substitution Order at 2 n.1.

The Court then permitted the parties to submit updated briefing addressing the FNC argument that was initially raised in the 2011 motion to dismiss. D.E. 62. On March 23, 2016, however, Plaintiffs requested that the FNC briefing schedule be postponed so they could file a motion for leave to amend the complaint. Plaintiffs argued that "an amended pleading would clarify the material facts and sharpen the issues in dispute in this case." Plfs' Mar. 23, 2016 Ltr. (D.E. 63). After considering Plaintiffs' argument and Defendants' opposition (D.E. 64), the Court denied Plaintiffs' request. D.E. 65.

Despite this denial, Plaintiffs filed their Motion to Amend on April 14, 2016, before filing an updated FNC brief. Plaintiffs' arguments include that (1) the joint executors should be given an opportunity "to frame the case as they see appropriate;" (2) the PAC "moot[s] any argument

11

Defendants may now make concerning either Yueh-Lan's original capacity to sue or the power of attorney granted to [Winston];" and (3) there have been a number of factual developments in the five years since the case was filed "that warrant a significant updating and streamlining of the complaint." Plfs' Motion to Amend Br. at 2-3 (D.E. 68). The PAC is twenty-two pages shorter than the FAC and asserts an additional cause of action pursuant to the Civil Code of Taiwan. *See* PAC (D.E. 68-3). Defendants opposed the motion and filed their Cross Motion to Dismiss, arguing that because the complaint was improperly filed in the first instance, amending the FAC is futile.[16] D.E. 78-80. Defendants further argue that an amended pleading would not moot or retroactively cure the threshold issues regarding the scope and validity of the POA. *Id.* Plaintiffs opposed the cross motion to dismiss. D.E. 93.

Defendants also filed a motion stating that they "renew their Motion to Dismiss the Amended Complaint filed on July 15, 2011," relying on briefing that was previously filed in support of their motion. Renewed Motion to Dismiss at 1 (D.E. 78). Through the renewed motion, Defendants seek dismissal on multiple grounds, including: (1) the FNC doctrine; (2) lack of subject matter jurisdiction because P.C. is a non-diverse Defendant; (3) lack of personal jurisdiction because P.C. was not properly served; (4) the FAC's failure to join indispensable parties; and (5) the POA did not authorize Winston to bring suit on Yueh-Lan's behalf. *See* Defs' Motion to

---

[16] Defendants also opposed the motion on procedural grounds, contending that "the filing of the present Motion for Leave appears to be in direct disregard of . . . [the] Order . . . which denied Plaintiffs' application to postpone further briefing of the [FNC] issue." Defs' Apr. 21, 2016 Ltr. (D.E. 69). Defendants allege that "the filing of the Motion for Leave appears to be an improper effort to change the order in which the Court has indicated it would be addressing the open issues in this action." *Id.* Plaintiffs countered that filing the motion was not "in defiance of [the Court's] decision to hear the [FNC] issue first, nor an 'improper effect to change the order.'" Plfs' Apr. 21, 2016 Ltr. at 1 (D.E. 46). Instead, Plaintiffs' assert that the FNC decision "could be impacted" by the more limited claims asserted in the PAC. *Id.* The simple fact is that the Court denied Plaintiffs' request, but Plaintiffs filed the motion anyway.

Dismiss Br. at 8-25 (D.E. 23-3).  Defendants also argue that the FAC should be dismissed pursuant to Rule 12(b)(6) because Plaintiffs fail to state a claim for any of the Taiwan claims and the New Jersey claims are dependent on the Taiwan claims.  *Id.* at 25-29.  Plaintiffs argue that because the original Motion to Dismiss was still pending, the Renewed Motion to Dismiss is improper.  *See* Certification of Jonathan S. Liss in Support of Plaintiffs' Opposition to Defendants' "Renewed Motion to Dismiss" ¶ 2 (D.E. 95).  Plaintiffs indicate, however, that if the Court considered the motion, Plaintiffs would rely on briefs and certifications that they previously filed regarding the Motion to Dismiss, the Motion to Substitute, the Motion to Amend, the Cross-Motion to Dismiss, and the Motion to Strike.  *Id.* ¶ 3.  Defendants filed a brief in reply.  D.E. 96.

Plaintiffs additionally filed a Motion to Strike, which requested that the Court strike the Renewed Motion to Dismiss and the Cross Motion to Dismiss.  Plaintiffs argue that Defendants did not have the procedural right to file either motion without leave of Court.  Plfs' Memorandum in Support of Motion to Strike at 5-6 (D.E. 94-1).  Plaintiffs further argue that in filing these motions, Defendants were attempting to re-litigate the Substitution Order.  Plaintiffs argue that doing so is frivolous and sanctionable conduct.  *Id.* at 7-10.  Defendants opposed the Motion to Strike (D.E. 99) and Plaintiffs filed a reply (D.E. 102).

On July 29, 2016, the Court heard oral argument on the pending motions.  During arguments, the Court reviewed the issue as to P.C.'s domicile at the time of filing and permitted the parties to engage in limited jurisdictional discovery.  June 29, 2016 Transcript 96:5-17 (D.E. 106).  The parties subsequently conducted jurisdictional discovery limited solely to P.C.'s passport; the Court set a briefing schedule to address this discovery and its impact on the Court's diversity jurisdiction.  D.E. 110. Before any briefing was submitted, however, Plaintiffs requested a stay of the briefing schedule because the parties were engaged in discussions regarding a

stipulation and consent order under which this matter would be dismissed and refiled in Taiwan. Plfs' Aug. 3, 2016 Ltr. (D.E. 111). The Court stayed the briefing schedule, but the parties were ultimately unable to come to an agreement. D.E. 117, 118. Instead of prolonging this matter and waiting for the parties to submit their supplemental briefing regarding P.C.'s domicile, as it originally intended to do, the Court will dismiss this matter on FNC grounds. The Court will not address Defendants other arguments as to dismissal.

## II.   VACATING THE SUBSTITUTION ORDER

After the probate proceedings in Taiwan were finalized, the Joint Executors moved to substitute themselves as plaintiffs in this action. D.E. 47. Defendants opposed the motion, relying on their arguments as to the validity and scope of the POA and Winston's ability to file suit. In essence, Defendants maintained that because the suit was improperly filed at inception, there is no action into which the Joint Executors can be substituted. *See* Defs' Opp. to Motion to Substitute at 18-25 (D.E. 52). Over Defendants' objections, the Court granted the Motion to Substitute. But in doing so, the Court stated:

> This order does not, and is not intended to, address defendants' arguments concerning an August 2005 power of attorney, Yueh-Lan Wang's competence when this matter was filed, and any other arguments concerning capacity to sue. Those matters are more appropriately addressed in a pleading or motion other than that currently before the Court.

Substitution Order at 2 n.1. Despite this clear and express limitation, Plaintiffs nevertheless claimed that "[t]he Court granted the Motion to Substitute *without reservation*." *See, e.g.*, Plfs' Reply Memorandum in Further Support of Motion to Amend and Cross Motion to Dismiss at 30 (emphasis added). Plaintiffs further stated that Defendants' arguments regarding the POA and Winston's ability to bring suit that were raised after the Substitution Order "improperly seek[] to reargue the previously decided Motion to Substitute." *Id.* Because of Plaintiffs' undoubtedly

mistaken interpretation, which flew in the face of the Court's ruling, the Court vacated the Substitution Order during oral argument. June 29, 2016 Transcript 8:11-16.

A court may revisit a prior decision to clarify or correct an earlier, ambiguous ruling. *In re Pharmacy Benefit Managers Antitrust Litig.*, 582 F.3d 432, 439 (3d Cir. 2009) (quoting *Swietlowich v. County of Bucks*, 610 F.2d 1157, 1164 (3d Cir. 1979)). A court also has discretion to reconsider an issue "and should exercise that discretion whenever it appears that a previous ruling, even if unambiguous, might lead to an unjust result." *Id.* (quoting *Swietlowich*, 610 F.2d at 1164). The Court considers the Substitution Order clear and unambiguous. But in light of Plaintiffs' mistaken interpretation of the Order and given the protracted history of this case, the Court believes it is prudent to vacate the Substitution Order in part. The Court does so to avoid an unjust result, namely the risk of foreclosing Defendants' opportunity to raise arguments regarding the validity and scope of the POA and Winston's capacity to sue. Consequently, the Court is now ruling that the substitution of the Joint Executors as Plaintiffs is permitted but it is limited to bringing and defending the motions addressed in this Opinion and Order and refiling the matter in Taiwan. The parties may address the full scope of all other issues relevant to the Motion to Substitute, which includes Defendants' argument that there is no case in which Plaintiffs may be substituted into, with a court of competent jurisdiction in Taiwan.[17]

## III.   DISMISSAL PURSUANT TO THE DOCTRINE OF *FORUM NON CONVENIENS*

The FNC doctrine allows a court to "defer its jurisdiction where principles of justice and convenience favor the action being brought in another forum." *Steward Int'l Enhanced Index Fund v. Carr*, No. 09-5006, 2010 WL 336276, at *2 (D.N.J. Jan. 22, 2010); *see also Sinochem*

---

[17] As noted, the arguments addressing the scope and validity of the POA and Winston's ability to file suit in the first instance are governed by Taiwanese law.

*Int'l Co. v. Malaysian Int'l Shipping Corp.*, 549 U.S. 422, 425 (2007) (stating that the doctrine permits dismissal when "a court abroad is the more appropriate and convenient forum for adjudicating the controversy"). Although FNC dismissal "is the exception rather than the rule," district courts have broad discretion to dismiss a matter pursuant to the doctrine. *Tech. Dev. Co., Ltd. v. Onischenko*, 174 F. App'x 117, 119 (3d Cir. 2006). As such, a court should look at the unique facts of each case and may dismiss a matter when a court outside the United States is clearly the better forum. *See Windt v. Qwest Commc'ns Int'l, Inc.*, 529 F.3d 183, 189 (3d Cir. 2008).

Courts conduct a three-step analysis to determine whether FNC dismissal is appropriate. First, a court must determine whether an adequate alternative forum exists. If such a forum exists, a court "must then determine the appropriate amount of deference to be given to plaintiff's choice of forum." *Id.* at 189-90. Last, a court must balance the relevant public and private interest factors. A court may dismiss the matter if the balance of these factors demonstrates that trial in the chosen forum would result in "oppressiveness or vexation to a defendant out of all proportion to the plaintiff's convenience," or is "inappropriate because of considerations affecting the court's own administrative and legal problems." *Lacey v. Cessna Aircraft Co.*, 862 F.2d 38, 42 (3d Cir. 1988).

A defendant bears the burden of persuasion to establish that each element in the FNC inquiry is satisfied. *See id.* at 43-44. "The defendant bears a heavy burden to satisfy [each] component[] of the analysis and must establish a strong preponderance in favor of dismissal." *Burke v. Quartey*, 969 F. Supp. 921, 929 (D.N.J. 1997) (citing *Lacey*, 862 F.2d at 43-44). As such, a defendant "must provide enough information to enable the District Court to balance the parties' interests." *Lacey*, 862 F.2d at 44 (quoting *Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 258 (1981)). Because this is a fact-sensitive inquiry, the level of detail that a defendant must provide to meet its burden is case specific. *Id.* At a minimum, a defendant must provide enough information to

establish that dismissal is appropriate under the circumstances and any evidence provided by the plaintiff must fail to rebut the defendant's information. *Chigurupati*, 480 F. App'x at 674 n.4.

### A. Adequate Alternative Forum

An adequate alternative forum exists if a defendant is amenable to process in the alternative jurisdiction and there is a cause of action that will provide a plaintiff with a satisfactory redress for his alleged injury. *Tech. Dev. Co., Ltd.* v. *Onischenko*, 536 F. Supp. 2d 511, 517 (D.N.J. 2007). Notably, "[i]nadequacy of the alternative forum is rarely a barrier to a [FNC] dismissal." *Chigurupati v. Daiichi Sankyo Co., Ltd.*, No. 10-5495, 2011 WL 3443955, at *3 (D.N.J. Aug. 8, 2011), *aff'd* 480 F. App'x 672 (3d Cir. 2012).

In this instance, Taiwan is an adequate alternative forum. First, P.C. and Susan reside in Taiwan and are clearly subject to service of process and jurisdiction there. Lee Cert. ¶¶ 2-3; Muscato Cert. Ex. 1, ¶ 43(g) (Winston's 2009 New Jersey State Court complaint listing Susan as a resident of Taiwan); Ex. 21 (July 27, 2015 Judgment of the High Court of Taiwan stating that Susan permanently resides in Taipei City). Although Vanessa is currently domiciled in Pennsylvania, she regularly travels to and consents to jurisdiction in Taiwan. Vanessa Cert. ¶¶ 2-3. Courts frequently condition FNC dismissal on such consent, and the Court sees no reason to depart from this practice here.[18] *See, e.g., Archut v. Ross Univ. Sch. of Veterinary Med.*, No. 10-

---

[18] Plaintiffs argue that Taiwan is an inadequate forum because Defendants fail to establish that Taiwan would give effect to Vanessa's consent to jurisdiction. Plfs' Updated FNC Br. at 6. Defendants correctly observe that "Plaintiffs have produced no evidence to suggest that the Taiwan courts would not accept [Vanessa's] consent." Defs' Updated FNC Reply at 6. Moreover, courts have concluded that Taiwan is an adequate alternative forum where, as Vanessa does so here, defendants agreed to submit to jurisdiction in Taiwan. *See, e.g., In re Air Crash Over Taiwan Straits on May 25, 2002*, 331 F. Supp. 2d 1176, 1182 (C.D. Cal. 2004) (stating that defendants establish that "Taiwanese courts will accept a defendant's consent to jurisdiction"); *Moletech Glob. H.K. Ltd. v. Pojery Trading Co.*, No. 09-27, 2009 WL 3151147, at *4 (N.D. Cal. Sept. 25, 2009) (defendants' agreement to submit to jurisdiction in Taiwan and waive any Taiwanese statute of limitations defenses "is sufficient to establish that Taiwan is an adequate alternative forum,

1681, 2013 WL 5913675, at *5 (D.N.J. Oct. 31, 2013) (concluding that St. Kitts was an adequate forum because defendants agreed to accept process there).

Second, Plaintiffs' claims can be litigated in Taiwan and Plaintiffs can obtain a satisfactory remedy for their alleged injuries if they prevail. Indeed, the first four counts of the FAC assert claims pursuant to the Civil Code of Taiwan. It would be illogical, to say the least, to believe that a Taiwanese court is unable to provide an adequate remedy for a violation of its own laws. *See* Muscato Cert Ex. 11, ¶ 19 (Professor Jan's certification stating that under Taiwanese law "Plaintiff can easily enforce the Taiwan court judgment on Defendants' assets if Plaintiff obtains a definitely favorable judgment"). In addition, the New Jersey claims are seemingly contingent on an underlying violation of Taiwanese law;[19] and a judgment as to the Taiwan claims will likely afford Plaintiffs full relief.

In their updated FNC brief, Plaintiffs argue for the first time that Taiwan is an inadequate forum. *Compare* Plfs' Opp. to Motion to Dismiss at 10-18 (D.E. 24) (failing to assert that Taiwan is an inadequate forum); Supplemental Opp. to Motion to Dismiss at 10-12 (D.E. 34) (same), *with* Plfs' Updated FNC Br. at 4-7 (contending that Taiwan is an inadequate forum). Plaintiffs' attempt to avoid dismissal, however, has little merit. Plaintiffs argue that if they were forced to refile this

_____

particularly as there is no evidence indicating that a remedy offered . . . would be 'clearly unsatisfactory.'") (citing *Piper Aircraft Co.*, 454 U.S. at 255 n.22). If a Taiwanese court determines that it does not have jurisdiction over Vanessa (or any other defendant for that matter), however, Plaintiffs are free to refile here because the conditions of dismissal would not be satisfied. *Copitas v. Fishing Vessel Alexandros*, 20 F. App'x 744, 746 n.1 (9th Cir. 2001).

[19] As noted, the New Jersey causes of action are as follows: Count Five – Conversion; Count Six – Unjust Enrichment; Count Seven – Constructive Trust; Count Eight – Accounting; and Count Nine – Civil Conspiracy. It appears that to succeed on any of the New Jersey claims, Plaintiffs first need to prove an underlying violation of Taiwanese law. In other words, if Plaintiffs do not prevail on the Taiwanese counts, they will not have an independent basis on which to go forward with the New Jersey claims. Moreover, it appears that if Plaintiffs prevail on the Taiwanese counts, they will be able to recover the same property sought by the New Jersey claims.

suit in Taiwan it would be barred by the statute of limitations. This concern is easily addressed. Courts frequently condition FNC dismissal on a defendant's waiver of her available statute of limitations defenses. *See, e.g., Archut*, 2013 WL 5913675, at *5 (concluding that alternate forum was adequate in part because defendants "agree[d] to waive any potential statute of limitations defense"); *Francois v. Hartford Holding Co.*, Nos. 2000/0112, 2001/0009, 2010 WL 1816758, at *4 n.11 (D.V.I. May 5, 2010) (compiling cases in which FNC dismissal was conditioned on waiver of statute of limitations defense). Here, Defendants have agreed to such a waiver. *See* June 29, 2016 Transcript 18:16-19:7 (stating that a waiver of any statute of limitations defense that was not available when the complaint was originally filed was acceptable to Defendants).[20]   Again, Plaintiffs fail to provide the Court with any credible basis to depart from this accepted practice.

Plaintiffs also contend that Taiwanese courts may not have the power to enforce some of the remedies Plaintiffs seek, "especially as to the specific property located in New Jersey and the United States."[21] Plfs' Updated FNC Br. at 6. Plaintiffs, however, fail to explain what remedies will not be enforceable. As discussed, it seems illogical that a Taiwanese court would be unable to provide an adequate remedy for a violation of the Civil Code of Taiwan. Moreover, "the relief [in the alternative forum] need not be as comprehensive or as favorable as a plaintiff might obtain in an American court." *Chang v. Baxter Healthcare Corp.*, 599 F.3d 728, 736 (7th Cir. 2010); *see also Tech. Dev. Co., Ltd.*, 536 F. Supp. 2d at 517-18. Consequently, Plaintiffs' apparent inability

---

[20] This waiver does not affect Defendants' right to assert statute of limitations defenses that existed when the complaint was initially filed. *See, e.g.*, Defs' Motion to Dismiss Br. at 28.

[21] The only asset that is specifically identified in the FAC is the Credit Suisse account which does not appear to have any connection to New Jersey. *See* FAC ¶¶ 140-143; Second Muscato Cert. ¶ 5. The Court sees no reason why a money judgment, which Plaintiffs do not appear to dispute is an available remedy in Taiwan, is unable to provide adequate relief if a Taiwanese court concludes that the account contains improperly transferred assets.

to receive some unidentified and unknown property through a judgment in Taiwan is not a sufficient reason to conclude that Taiwan is an inadequate forum.

Plaintiffs additionally maintain that Taiwan is inadequate because Defendants have not shown that their New Jersey claims can be brought in Taiwan. Plfs' Updated FNC Br. at 7. Whether Plaintiffs can assert identical causes of action in both forums is not the controlling standard. Instead, as noted, what matters for FNC purposes is whether a plaintiff can receive appropriate redress for the underlying wrongful conduct. *See Princeton Football Partners LLC v. Football Ass'n of Ir.*, No. 11-5227, 2012 WL 2995199, at *5 (D.N.J. July 23, 2012) (granting dismissal and noting that although the exact RICO and NJ RICO claims do not exist under Irish law, the underlying claim is premised on fraudulent acts, which are justiciable under Irish law). Further, because Plaintiffs' New Jersey claims rely upon violations of Taiwanese law in the first instance, the Court gives little consideration to this argument. Indeed, it appears that if Plaintiffs prevail on the Taiwanese counts, they will be afforded the full relief that they seek.

It is clear that Plaintiffs are able to bring suit in Taiwan against the same Defendants to obtain relief for the alleged improper transfers. Consequently, Taiwan in an adequate alternative forum.

### B. Degree of Deference Owed to Plaintiffs' Choice of Forum

The touchstone inquiry for determining the level of deference owed to a plaintiff's choice of forum is the convenience of the selected forum. *Kisano Trade & Invest Ltd. v. Lemster*, 737 F.3d 869, 875 (3d Cir. 2013). In most cases, a domestic plaintiff's choice of forum is afforded a "strong presumption of convenience." *Id.* at 873. "When a plaintiff is foreign, however, the choice of a United States forum 'deserves less deference.'" *Id.* at 874 (quoting *Piper Aircraft Co.*, 454 U.S. at 256). This lesser degree of deference is based "on realistic doubts about the ultimate

convenience of a foreign plaintiff's choice to litigate in the United States." *Id.* at 875 (quoting *Pollux Holding Ltd. v. Chase Manhattan Bank*, 329 F.3d 64, 73 (2d Cir. 2003)). A foreign plaintiff, however, may increase the amount of deference afforded to his choice of forum "by making a strong showing of convenience." *Windt*, 529 F.3d at 190. Demonstrating that "the parties have a 'bona fide connection' with the United States and the chosen forum" is sufficient to establish a strong showing of convenience. *Steward Int'l Enhanced Index Fund*, 2010 WL 336276, at *6 (citing *Iragorri v. United Techs. Corp.*, 274 F.3d 65, 72 (2d Cir. 2001)). A court should therefore consider "where the parties are from, where the evidence is concentrated, and where the relevant conduct occurred." *Id.* (citing *Windt*, 529 F.3d at 191). Finally, the level of deference afforded to a plaintiff moves along a "sliding scale." *Id.* (citing *Windt*, 529 F.3d at 191).

This case was brought by Winston, a citizen of Taiwan, on behalf of Yueh-Lan, who was also a citizen of Taiwan. Compl. ¶ 4. Now, the Joint Executors, who were appointed after three years of probate proceedings in Taiwan and appear to also be residents and citizens of Taiwan, seek to continue the action. *See* Memorandum of Law in Support of Motion to Substitute at 4. Therefore, as foreign Plaintiffs, their choice of forum is afforded little deference unless Plaintiffs establish "a strong showing of convenience." *Windt*, 529 F.3d at 190.

Plaintiffs argue that their choice of forum "should be granted full deference because they have strong, legitimate reasons for pursing Yueh-Lan's claims in this forum." Plfs' Updated FNC Br. at 7. Plaintiffs contend that (1) at the time of filing Defendants were all United States citizens and were domiciled in New Jersey; (2) much of the evidence "is located in or very near New Jersey;" and (3) "a significant amount of the wrongful conduct . . . occurred in New Jersey." *Id.* at 7-13. Defendants counter that Plaintiffs have not demonstrated a strong showing of

convenience, therefore, their choice of forum should be afforded no deference. Defs' Updated FNC Reply at 7.

The Court concludes that Plaintiffs' choice of forum will be afforded some, but not full, deference. First, Plaintiffs argue that Defendants were domiciled in New Jersey when this case was filed. *See* Plfs' Updated FNC Br. at 7. This, however, is a disputed issue of fact. Moreover, Defendants establish that P.C. and Susan are presently residents of Taiwan.[22] *See* Lee Cert. ¶ 3; Muscato Cert. Ex. 1, ¶ 43(g) (Winston New Jersey state court complaint listing Susan as a resident of Taiwan); Ex. 21 (July 27, 2015 Judgment of the High Court of Taiwan stating that Susan permanently resides in Taipei City). Defendants also provide evidence demonstrating that Vanessa lives in Pennsylvania. Vanessa Cert. ¶ 3. Although Vanessa resides in the United States, she travels to Taiwan frequently to visit her mother, P.C., and has consented to jurisdiction in Taiwan. *Id.* Moreover, Winston and the Joint Executors reside in Taiwan. Consequently, every individual that is a party to this litigation resides in or has a strong connection to Taiwan, not New Jersey.

Plaintiffs also allege that much of the evidence is located in or near New Jersey. Specifically, Plaintiffs argue that in addition to Defendants, they have identified "no less than a dozen witnesses who reside in New Jersey or a neighboring State who possess critical knowledge regarding the transfers of assets out of the [m]arital [e]state to Defendants." Plfs' Updated FNC Br. at 11. Plaintiffs contend that these witnesses "would not be subject to jurisdiction in any foreign forum." *Id.* Defendants respond that Plaintiffs have not identified what information the

---

[22] P.C. is currently 81 years old, resides in Taiwan, and does not speak English. Defs' Updated FNC Br. at 5, 14. Plaintiffs state that they would be willing to conduct P.C.'s deposition in Taiwan if she is unable to travel (*see* Plfs' Updated FNC Br. at 10), which essentially concedes that Taiwan is a more convenient forum for P.C., who is the central figure in Plaintiffs' case. It is due to P.C.'s alleged machinations and undue influence that the improper transfers and sheltering of assets occurred, according to Plaintiffs. *See, e.g.*, FAC ¶ 51-54.

identified witnesses possess and that at least five of the witnesses are located in Taiwan, Pennsylvania, or Texas. Def's Updated FNC Reply at 9.

Although some evidence may be located in New Jersey, the FAC makes clear that the evidence in this case is not concentrated in New Jersey, and is likely located throughout the world. First, evidence regarding the Credit Suisse account, the only asset that is specifically identified in the FAC, is likely located in Asia.[23] *See* Second Muscato Cert. ¶ 5. In addition, while Plaintiffs identify witnesses in or near New Jersey with "critical knowledge," Plaintiffs fail to identify what information these witnesses reportedly possess. And given Plaintiffs allegation that Y.C. limited sharing the details of FPG's ownership structure to "Defendants and a few trusted FPG employees, including Hung" (FAC ¶ 37), the Court doubts the importance of these identified witnesses, especially those that do not appear to be affiliated with an FPG entity. Moreover, Defendants maintain that at least four of these key witnesses are now located in Texas or Taiwan, both of with are outside this Court's subpoena power. *See* Second Muscato Cert. Ex. 22 (Certification of FPG's Director of Corporate Human Resources for FPC USA). Defendants further assert that witnesses and evidence related to the POA and Yueh-Lan's capacity are all located in Taiwan. Defs' Updated FNC Br. at 14. As discussed, these are threshold issues that must be addressed to determine whether the suit was appropriately filed in the first place. Finally, although Plaintiffs state that evidence "is located in or very near New Jersey (including New York, Pennsylvania, and Washington, D.C.)," (Plfs' Updated FNC Br. at 11), the fact that evidence may be in closer proximity to New Jersey than Taiwan is not sufficient to establish convenience. *See Miller v. Bos.*

---

[23] The PAC contains an additional allegation that P.C. improperly received shares of Sana International stock and cash. PAC ¶¶ 21, 65. The PAC, however, fails to provide any information by which the Court could reasonably infer that the conduct related to these transfers occurred in New Jersey or that the cash or stock shares are in the state.

*Sci. Corp.*, 380 F. Supp. 2d 443, 450-51 (D.N.J. Aug. 2, 2005) (concluding that proximity to principal place of business and state of incorporation alone "does not establish that Plaintiffs have met their burden of making a strong showing of convenience."). Importantly, Plaintiffs do not adequately explain what the anticipated evidence is in New Jersey, Pennsylvania, or Washington, D.C. To the extent the evidence in Washington, D.C. is related to the pending action there, *see supra* note 11, Plaintiffs already have access to this information. Because evidence is not concentrated in New Jersey, or even in the United States, litigating this matter in New Jersey is not more convenient for the parties than litigating in Taiwan.

Last, Plaintiffs argue that the wrongful conduct occurred in New Jersey. Specifically, Plaintiffs allege that the transfers were orchestrated "with the assistance of advisors in New Jersey, New York and Washington D.C." Plfs' Updated FNC Br. at 14. While the FAC includes broad, conclusory statements alleging that a substantial portion of the marital assets "are now located in New Jersey, elsewhere in the United States and throughout the world" (FAC ¶ 65), Plaintiffs fail to provide any specific facts that tie the alleged wrongful conduct to New Jersey. These broad allegations that lack factual support do not demonstrate that New Jersey is a more convenient forum.

In sum, while one Defendant is, and some evidence may be, located in or near New Jersey, a majority of the individuals directly associated with this litigation and much of the evidence is located in or near Taiwan or elsewhere in the world. Consequently, there is not a strong showing of convenience in litigating in New Jersey. Because this case involves foreign Plaintiffs with little connection to New Jersey, Plaintiffs' choice of forum is not afforded full deference. Although Plaintiffs are not afforded the full deference that would be provided to a plaintiff that brought suit in his or her "home" jurisdiction, they are not afforded the "low" deference that is afforded to a

foreign plaintiff who has no connection whatsoever to the state. Plaintiffs here, fall somewhere in the middle of the sliding scale. *See, e.g., Steward Int'l Enhanced Index Fund*, 2010 WL 336276, at *6 (reducing the level of deference due to "the parties' primary connection with the U.K., and the minimal connection with the State of New Jersey in particular.").

### C. Balancing of the Public and Private Interest Factors Favors Dismissal

The final step is balancing the public and private interest factors. To dismiss on FNC grounds, the balance must "tip[] decidedly in favor of a trial in the foreign forum." *Kisano*, 737 F.3d at 878. Here, the public interest factors weigh heavily towards dismissal and the private interest factors tip slightly in favor of dismissal. Together, the factors as a whole clearly dictate that this case should be litigated in Taiwan.

#### 1. The Public Interest Factors

The public interest factors include (1) the administrative difficulties from court congestion; (2) "the local interests in having the case tried at home;" (3) a "desire to have the forum match the law that is to govern the case to avoid conflict of laws problems or difficulty in the application of foreign law;" and (4) the unfairness of "burdening citizens in an unrelated forum with jury duty." *Kisano*, 737 F.3d at 873 (citing *Delta Air Lines v. Chimet, S.p.A.,* 619 F.3d 288, 296 (3d Cir. 2010)). Further, in evaluating the public interest factors "the court must consider the locus of the alleged culpable conduct . . . and the connection of that conduct to plaintiff's chosen forum." *Lacey*, 862 F.2d at 48 (quoting *Van Cauwenberghe v. Biard*, 486 U.S. 517, 528 (1988)).

Here, the public interest factors tip decidedly towards dismissal -- the most important being the desire to have the forum match the governing law. Plaintiffs argue that this Court is equipped to apply Taiwanese law and that courts "routinely reject claims of [FNC] simply because a court needs to apply foreign law." Plfs. Updated FNC Br. at 18. The Court, however, is not dismissing

this case solely because it must apply Taiwanese law; this is just one factor of many that weighs towards dismissal. Yet, this factor is important to the Court's analysis.

The dispute here rests entirely on the application of Taiwanese law. The dispute is complicated by the fact that the parties themselves offer materially differing views on the interpretation of Taiwanese law – with each side relying upon a different law professor from the same school in Taiwan. For example, if the Court did not dismiss this matter on FNC grounds it would, at a minimum, need to address Defendants' arguments regarding the scope and validity of the POA, which requires a determination as to Yueh-Lan's mental capacity at the time of filing and as to whether the POA authorized Winston to bring suit on Yueh-Lan's behalf. These issues are contested by the parties and require the Court to resolve disputes over multiple Taiwanese laws. Then, if the Court resolved the standing arguments in Plaintiffs' favor, it would need to (1) determine if P.C. and Y.C. were married pursuant to Taiwanese law; (2) interpret multiple Taiwanese inheritance and marital property laws; and (3) address Taiwanese statutes of limitations. And, as discussed, even if the Court were to ever reach the New Jersey claims, they are entirely dependent on Taiwanese inheritance laws and the marital property regime. Consequently, it is clear that a Taiwanese court is better equipped to resolve the many disputed legal issues in this case. *See, e.g.*, *Windt v. Qwest Commc'ns Int'l, Inc.*, 544 F. Supp. 2d 409, 425 (D.N.J. 2008), *aff'd* 529 F.3d 183 (3d Cir. 2008) (concluding that "this Court has no reason to believe that it is better equipped to deal with eleven Dutch statutory provisions than the Dutch court is to deal with one American statute"); *Moletech Glob. H.K. Ltd. v. Pojery Trading Co.*, No. 09-27-SBA, 2009 WL 3151147, at *6 (N.D. Cal. Sept. 25, 2009) ("If the instant case is not dismissed, the Court would need to apply the Taiwanese law . . . . This would be an arduous task as the Court is unfamiliar with Taiwanese law, and this factor weighs heavily in favor of dismissal.").

The remaining public interest factors also favor dismissal.  Although Plaintiffs frame the case as having a "locus" in New Jersey, it ultimately involves the distribution of a Taiwanese citizen's estate to other Taiwanese citizens.  Given the paucity of specific factual allegations as to improper conduct in New Jersey, the mere fact that Y.C. had businesses in New Jersey and traveled here is insufficient to convert this case into a local matter. *See Windt*, 544 F. Supp. 2d at 423 ("The fact that two of these defendants are domiciled in the state of New Jersey does not transfer the case into a 'local dispute,' nor can the facts that four Board meetings took place somewhere in the United States and Defendants, while being present in the United States, took part in five international conference calls, transform the case into an 'American' dispute.").  As discussed, the FAC fails to provide any specific facts demonstrating that there is a legitimate connection to New Jersey, or anywhere in the United States, concerning the improper transfer of assets.  As a result, there is no local interest in deciding the matter here.  Along those lines, New Jersey citizens should not be burdened with jury duty for a matter with such limited connection to this state.  In contrast, citizens of Taiwan likely have a strong interest in the distribution of the estate of one of its wealthiest citizens.  Consequently, these factors also weigh strongly in favor of dismissal. *See, e.g., Windt*, 544 F. Supp. 2d at 425 (concluding that public interest factors heavily favored dismissal where the court would be required to apply foreign law, the local community had "virtually no interest in the dispute," and local jurors would be improperly burdened); *Warner Tech. & Inv. Corp. v. Hou*, No. 13-7415, 2014 WL 7409978, at *7 (D.N.J. Dec. 31, 2014) (concluding that the public interest factors weighed in favor of dismissal because the United Kingdom had a stronger interest in the outcome of the litigation).  Also of note is that the District of New Jersey suffers from severe court congestion and is one of the busiest districts in the country. *See*        June         30,         2016         Federal         Court         Management         Statistics,

27

http://www.uscourts.gov/statistics/table/na/federal-court-management-statistics/2016/06/30-1

(last visited Oct. 17, 2016).

### 2. The Private Interest Factors

The relevant private interest factors include (1) the ease of access to sources of proof; (2) the ability to compel witness attendance; and (3) obstacles "impending an otherwise easy, cost-effective, and expeditious trial." *Kisano*, 737 F.3d at 873 (citing *Delta Air Lines, Inc.*, 619 F.3d at 296). When analyzing these factors, a court must "scrutinize the substance of the dispute to evaluate what proof is required, and determine whether the pieces of evidence cited by the parties are critical, or even relevant to the plaintiff's cause of action and to any potential defenses." *Warner Tech. & Inv. Corp.*, 2014 WL 7409978, at *5 (quoting *Van Cauwenberghe*, 486 U.S. at 528). This analysis, however, "does not call for a detailed development of the entire case." *Id.* (quoting *Mediterranean Golf, Inc. v. Hirsh*, 783 F. Supp. 835, 843 (D.N.J. Nov. 27, 1991)).

Defendants argue that the private interest factors favor dismissal because (1) the parties will incur "difficulties and expense" in translating documents from Chinese and Taiwanese into English; (2) witnesses, including P.C., will have to give evidence in Taiwanese or Mandarin; and (3) witnesses and documents in Taiwan will be difficult to obtain for litigation in New Jersey. Defs' Updated FNC Br. at 13-15. Plaintiffs disagree, arguing that the private interest factors weigh against dismissal. Plfs' Updated FNC Br. at 14-15. The Court concludes that the private interest factors tip slightly in Defendants' favor.

First, the Court gives some weight to Defendants' argument that the expense and burden of translating documents and witness testimony weighs towards dismissal. Based upon the allegations in the FAC, it does appear at this time that most anticipated evidence will be in Taiwanese. The Court does not give this factor full weight because, given the international scope

of the allegations, it is foreseeable that evidence from non-Taiwanese sources will also be necessary. The Court must also consider any other obstacles "impending an otherwise easy, cost-effective, and expeditious trial." *Kisano*, 737 F.3d at 873. The Court concludes that as a whole, litigating this case in New Jersey creates far more obstacles and expenses than litigating in Taiwan. As discussed, Plaintiffs and two Defendants live in Taiwan. The third Defendant, Vanessa, travels to Taiwan frequently. The threshold issue, whether Winston had authority to bring the suit in the first instance, depends upon an interpretation of documents written in Taiwanese. Given the location of the key witnesses and the issues in the case, it appears that it will be more financially feasible for the parties to litigate the matter in Taiwan. Further, the parties have also retained expert witnesses to interpret Taiwanese law. This cost will be unnecessary if the case were litigated in Taiwan. In addition, because the New Jersey claims are contingent upon the Taiwanese claims, and seek relief similar to that provided by the Taiwanese counts, the parties will likely not need experts to interpret the applicable law for the New Jersey claims. As a result, this factor tips toward dismissal.

The ease of access to sources of proof also favors Defendants. As discussed, some evidence may be located in New Jersey but much of the evidence appears to be located in or near Taiwan. *See supra* Part III.B (Degree of Deference Owed to Plaintiffs' Choice of Forum).

The ability to compel witness testimony, however, is in equipoise because Taiwan is not a signatory to the Convention on the Taking of Evidence Abroad in Civil or Commercial Matters. *See* HCCH Member List, https://www.hcch.net/en/states/hcch-members (last visited Oct. 17, 2016). Consequently, the Court is unable to compel documents or witnesses who may be relevant to many issues in this case, including the threshold dispute regarding the scope and validity of the POA. The Court recognizes that the parties will face similar issues compelling evidence in

Taiwan, but again, the Court doubts the relevance and importance of the "key witnesses" who are located in New Jersey.[24]  In short, whether the matter is litigated in Taiwan or in New Jersey, this legal obstacle will exist.

Plaintiffs argue that although they are in the process of litigating in multiple forums, this matter "is the only proceeding that seeks recovery from the[se] Defendants" and that "[a]ny purported 'inconvenience' Defendants claim to suffer is of their own making" because they accepted the improper transfers.  Plfs' Updated Br. at 16.  Of course, this argument assumes the basic point of contention – that improper transfers occurred.  More importantly, the Court, is not preventing Plaintiffs from pursuing these claims; it is simply dismissing the case in favor of litigation in a more convenient forum that is better equipped to handle this dispute and has a legitimate connection to the matter.

In sum, Taiwan is an adequate alternative forum.  Because Plaintiffs' choice of forum is afforded only some deference, and the public and private interest factors together tip decidedly in favor of litigation in Taiwan, this case will be dismissed pursuant to the FNC doctrine.

## IV.   THE REMAINING MOTIONS

Because the Renewed Motion to Dismiss is granted, Plaintiffs' Motion for Leave to Amend (D.E. 68) and the Cross-Motion to Dismiss (D.E. 79) are moot.  The Court notes, however, that even if Plaintiffs were granted leave to amend their pleading, nothing in the PAC would change the Court's decision to dismiss on FNC grounds.

---

[24] Plaintiffs argue that witnesses in Taiwan who can testify about Y.C.'s assets "are likely to be closely affiliated with FPG and, therefore could be persuaded by Susan . . . to provide testimony in New Jersey voluntarily."  Plfs' Updated FNC Br. at 12.  If Plaintiffs' argument is correct, the Court does not see why the converse is not also true, such that FPG affiliated witnesses in New Jersey could be persuaded to voluntarily testify in Taiwan.

The Motion to Strike (D.E. 94) is denied as procedurally improper as Plaintiffs do not specify any basis by which a court may strike the requested motions.  Rule 12(f) permits a court to "strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter."  Fed. R. Civ. P. 12(f).  But the plain language of the rule only addresses material in pleadings, not a motion in its entirety.  *See In re Anadigics, Inc., Sec. Litig.*, No. 08-5572, 2011 WL 4594845, at \*12 (D.N.J. Sept. 30, 2011) (dismissing Rule 12(f) motion seeking to strike an appendix to Defendants' moving brief because the document was not a pleading); *see also* 5C Charles Alan Wright *et al*, Federal Practice And Procedure § 1380 (3d ed. 2016 Update) ("Rule 12(f) motions may only be directed towards pleading as defined by Rule 7(a); thus motions, affidavits, briefs, and other documents outside of the pleadings are not subject to Rule 12(f).").  The Court is unaware of any other basis by which it may strike the relevant materials, including the entire motion.

In addition, the Court would be remiss if it failed to point out the irony in Plaintiffs' argument that the Renewed Motion to Dismiss and the Cross Motion to Dismiss should be stricken because they were filed without leave of Court.  First, in filing the Renewed Motion to Dismiss, Defendants were merely renewing the previously filed Motion to Dismiss, which had not yet been restored to the active docket.  *See* D.E. 78.  And the Cross Motion to Dismiss was brought in response to Plaintiffs' Motion to Amend, which was filed after the Court refused to postpone the FNC briefing schedule to permit Plaintiffs to seek leave to file an amended complaint.  D.E. 65.  Even if the Court accepts Plaintiffs' assertion that they did not openly defy the Court's order in filing the Motion to Amend, the motion was filed after the Court unequivocally denied Plaintiffs' request.

## V.    CONCLUSION

For the foregoing reasons, Defendants' Renewed Motion to Dismiss (D.E. 78) is **GRANTED** pursuant to the doctrine of *forum non conveniens*. The Motion for Leave to Amend (D.E. 68) and the Cross Motion to Dismiss (D.E. 79) are **DENIED**, without prejudice, as moot, and the Motion to Strike (D.E. 94) is **DENIED** as procedurally improper. Moreover, the Substitution Order (D.E. 61) is vacated and the Joint Executors are substituted as Plaintiffs for the limited purpose of addressing the motions discussed in this opinion and the related Order, and to refile this matter in a court of competent jurisdiction in Taiwan. The other arguments raised in opposition to Plaintiffs' Motion to Substitute remain open issues, which Defendants can assert before a Taiwanese court if they so choose. An appropriate form of Order accompanies this opinion.

Dated:  October 17, 2016

John Michael Vazquez, U.S.D.J.